Timothy J. BARTRUFF, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A03–9806–CR–294.

Court of Appeals of Indiana.

Feb. 24, 1999.

Joseph R. Morris, Kizer & Neu, Plymouth, Indiana, Attorney for Appellant:

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee:

## OPINION

GARRARD, Judge

This is an interlocutory appeal from the denial of a motion to suppress evidence obtained during a search of Timothy J. Bartruff ("Bartruff")'s automobile. He is charged with illegal possession of a handgun as a Class C felony and operating a vehicle without a valid license, a Class C infraction. The question presented concerns how far special "interdiction" police officers may properly go in their efforts to halt the flow of controlled substances and other contraband being carried along our state highways.[1]

## ISSUE

The sole issue presented is whether the warrantless search of Bartruff's vehicle violated his rights under the Fourth Amendment of the United States Constitution.

## FACTS

On January 2, 1998, Indiana State Police Master Trooper Lee Boone ("Boone") was patrolling U.S. Highway 30 when he observed Bartruff's vehicle following another vehicle too closely. He then clocked Bartruff's vehicle as traveling 57 miles per hour in a 55 mile per hour speed zone. Based upon these infractions Boone stopped Bartruff's vehicle. He advised Bartruff that he was going to issue warnings, and Bartruff informed him that Bartruff's driver's license had been suspended. Boone asked Bartruff's female passenger for identification, and she gave him her driver's license which had expired two days earlier.

Boone then required Bartruff to accompany him to his police car while he ran a license check on Bartruff and the passenger. Boone learned that Bartruff's license was indeed suspended and that the passenger's license had just expired. Boone then began questioning Bartruff about whether he was trafficking drugs and whether he had any drugs or firearms in his vehicle. Boone testified that Bartruff appeared to him to be very nervous, so Boone asked Bartruff to sign a consent to search form and agree to a voluntary search of his vehicle. Bartruff declined to give consent or sign the form. Boone then called the nearby Plymouth, Indiana Police Department in an effort to secure a drug-sniffing dog, but none was available. He then decided to impound Bartruff's vehicle, and called for a tow truck. Boone testified that it was necessary to impound the vehicle because it was parked on the berm near enough to an intersection to constitute a hazard, and neither Bartruff nor his passenger possessed a valid driver's license. Prior to the arrival of the tow truck Boone began to inventory the contents of Bartruff's vehicle and discovered a handgun under the driver's seat. He subsequently found a number of cartridges in the hatchback of the vehicle. Boone arrested Bartruff for carrying a handgun without a license.

During testimony at a deposition and at the suppression hearing, Boone also testified that he was an "interdiction" officer and his assignment was to focus on "[d]rug trafficking, handguns and various criminal [activities] ... coming across various highways." He had received special training for this duty and had been a state police officer since 1979. He stated that U.S. Highway 30 was considered a "pipeline" highway, and that one of the things that attracted his attention to Bartruff was that he was only driving 57 miles per hour while the normal traffic flow was traveling 62 to 64 miles per hour. He acknowledged that other officers permitted that traffic flow, but testified that he did not. He would not allow more than one mile an hour over the speed limit. Boone also acknowledged that many officers might have permitted a driver such as Bartruff to drive his vehicle across the four-lane highway to the Gas America truck stop located there and leave their vehicle parked there rather than having it towed and impounded. Again, he testified that he would not do so.

The State charged Bartruff with illegal possession of a handgun after having been convicted of a felony within fifteen years, a Class C felony, and operating a vehicle without a valid license, a Class C infraction. Bartruff filed a pre-trial motion to suppress

---

1. *The Indianapolis Star* carried a feature article about these officers and their efforts to control smuggling in its Sunday edition on January 17, 1999.

evidence obtained during the warrantless search of his vehicle. Following a hearing the trial court denied Bartruff's motion to suppress, and he perfected this interlocutory appeal.

### DISCUSSION AND DECISION

Initially, we note two things. First, the State has not attempted to justify the search as being incident to a lawful arrest, nor would the facts support such a contention. *See Knowles v. Iowa,* — U.S. —, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). Secondly, Bartruff has not challenged the propriety of the original stop. Such an argument on Fourth Amendment grounds would be bound to fail in light of the Supreme Court's decision in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). *See also State v. Hollins,* 672 N.E.2d 427 (Ind.Ct. App.1996), *trans. denied.* (These decisions, both of which concerned illegal drugs observed in plain view, hold that as long as police indeed have probable cause to stop a vehicle for a traffic violation, their possible motives for doing so, or that a "reasonable" police officer might not have done so, have no bearing on the validity of the stop.)

 Bartruff challenges the validity of the inventory search which revealed the presence of the handgun.[2] That in turn requires that we look at the decision to impound. To prevail on the question of whether an impoundment was warranted in terms of the community caretaking function of the police, the State must demonstrate that (1) the police officer's belief that the vehicle posed some threat or harm to the community or itself was imperiled was consistent with objective standards of sound policing, and (2) the decision to combat that threat by impounding was in keeping with established departmental routine or regulation. *Fair v. State,* 627 N.E.2d 427, 433 (Ind.1993). The question is not whether there was an absolute need to dispose of the vehicle but whether the decision to do so was reasonable in light of the applicable standard. *Id.*

██ Boone testified that Bartruff's vehicle was located near a busy intersection known as a scene of fatalities and serious accidents. He stated that although the vehicle was off the roadway on the berm, he believed it would be an obstruction to the view of traffic traveling southbound toward the intersection. Moreover, neither occupant of the vehicle was entitled to move it since neither possessed a valid operator's license. On these facts, Boone's belief that Bartruff's vehicle posed some threat to others was objectively reasonable.

Boone further testified that his decision to impound the vehicle was pursuant to the standard operating procedures (the "SOPs") of the Indiana State Police pertaining to "abandoned" vehicles. Section III(C) of the procedures defines abandoned vehicle as "a vehicle located on public property in such a manner as to constitute a hazard or obstruction to the movement of pedestrian or vehicle traffic on a public right-of-way." The record establishes that Bartruff's vehicle was located on public property in such a manner as to constitute a traffic hazard and was essentially abandoned due to the absence of any qualified driver to operate the vehicle. Accordingly, Boone's decision to impound was consistent with established departmental routine or regulation. The decision was therefore warranted under the circumstances.

██ We now turn to the search itself. To establish that a challenged search comes within the inventory exception, the State must do more than offer simply the statement of a police officer that the search was conducted as a routine inventory. It must establish that the search was conducted pursuant to police department standard operating procedures. *Peete v. State,* 678 N.E.2d 415 (Ind.Ct.App.1997), *trans. denied.* "In order to defeat a charge of pretext, 'the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them.'" *Id.* (quoting *Fair,* 627 N.E.2d at 435).

---

**2.** The Court in *Whren* continued to recognize the doctrine of *Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) that an inventory search must not be used as a ruse for general rummaging.

As already noted, Boone testified that his impoundment of Bartruff's vehicle and subsequent inventory search were done pursuant to the SOPs pertaining to abandoned vehicles. Section IV(E) of the SOPs describes the procedure to be utilized when an abandoned vehicle has been impounded and provides:

> An inventory of the vehicle or parts shall be conducted immediately upon the release of the vehicle/parts to the storage area. Except when the owner of the vehicle is present and is in the position or capable of taking custody of the property within the vehicle, an inventory is not necessary. Example: an accident where the driver is present.

The SOPs further observe that the purpose of conducting an inventory is to protect the property right of the owner and to protect the police from false claims of lost or damaged property.

In the present case Boone conducted the inventory search at the scene rather than after the vehicle had been towed to a police impoundment or storage lot as contemplated by the SOPs. Moreover, Boone is a drug interdiction officer rather than an officer responsible for the custody of impounded property. Both the location of the search and the primary responsibilities of the officer conducting the search may be considered indicia of pretext which draw into question whether the search was conducted in good faith. *Fair*, 627 N.E.2d at 436. In addition, Bartruff was present at the scene and was capable of taking custody of the property within the vehicle both to protect the property and the police from claims of loss or damage. Thus, an inventory of the vehicle's contents was neither necessary nor consistent with established departmental procedures. We find these facts, together with the officer's admission that he felt certain the vehicle contained drugs or other contraband, and his efforts to secure a consent to search and then a drug-sniffing dog, demonstrate that the "inventory" search was mere pretext and fails to pass constitutional muster.

The State urges that even if the search was improper we should sustain the result on the basis of the inevitable discovery rule. As an exception to the exclusionary rule, our courts have held that "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Banks v. State*, 681 N.E.2d 235, 240 (Ind.Ct. App.1997) (quoting *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)). The rationale, thus, is that when the authorities have seized evidence in violation of statutory or constitutional protections, they should be placed in no better, *but no worse*, position than they would have been had no impropriety occurred. *Id.*

Thus, the State argues that had Bartruff's vehicle been towed after it was impounded and the inventory conducted at the storage area as called for by the SOPs, the handgun would inevitably have been discovered. The flaw in this argument is that it presupposes Bartruff's personal property would have remained in the vehicle until it reached the storage area. Under the SOPs that should not have been so because Bartruff and his passenger were present and were apparently capable of taking custody of their property within the vehicle. Thus, under the SOPs, they were permitted to do so. Furthermore, on the record before us it does not appear by a preponderance of the evidence, or otherwise, that any attempt by Bartruff to remove the handgun from the vehicle would necessarily have disclosed its existence to the officer.[3] We conclude, therefore, that the State has failed to establish the application of the inevitable discovery rule.

Accordingly, we determine that the evidence was improperly seized and the motion to suppress should have been granted. In so holding we also recognize the value of stemming the flow of illegal drugs and other contraband through and into our state. Special "interdiction" officers may constitute a legitimate tool to be used in that effort. Yet

---

**3.** While this is arguably relevant to determining "inevitable discovery," we stress that the failure to follow the established procedure determines the invalidity of the search.

we must remain mindful of the value and purpose of our citizens' Fourth Amendment right to be free of unreasonable searches and seizures. *Whren* and its progeny permit valid stops for traffic violations regardless of the officer's motive. Often an officer in such a situation may see contraband in plain view. The occupant of a vehicle may make an incriminating admission or grant permission for a search. The consequences of these events may result in valid arrests for offenses more serious than the traffic violation. But when none of those things occur and the officer then decides that an inventory search is necessary to enable him to determine the contents of the vehicle, pretext has been clearly signaled. At that juncture the officer must proceed most scrupulously or the ensuing search will be found violative of the Fourth Amendment.

The decision of the trial court is reversed with instructions to grant the motion to suppress.

Reversed and remanded.

BAKER, J. and ROBB, J. concur.