**STATE of Indiana, Appellant–Plaintiff,**

v.

**Kevin J. LUCAS and Matthew S. Winkle, Appellees– Defendants.**

**No. 73A01–0512–CR–570.**

Court of Appeals of Indiana.

Jan. 17, 2007.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General Indianapolis, IN, Attorneys for Appellant.

H. Curtis Johnson, Brown, DePrez & Johnson, P.A., Shelbyville, IN, Attorney for Kevin J. Lucas.

James R. Lisher, Lisher Law Office, Shelbyville, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

The State of Indiana brings this interlocutory appeal from the Shelby Superior Court's grant of suppression motions filed

by Kevin J. Lucas and Matthew Winkle (collectively "the Defendants"). The State raises one issue: whether the trial court erred when it granted Defendants' motions to suppress evidence discovered in a locked container inside a stolen van the Defendants were traveling in.[1] Concluding that the trial court properly suppressed the evidence recovered from the locked metal box, we affirm.

### Facts and Procedural History[2]

On February 12, 2005, while on routine patrol, Shelby County Sheriff's Deputy Chris Holder ("Deputy Holder") spotted a van with a loose license plate traveling on Interstate 74. Deputy Holder ran a computer check on the van's license plate number and learned that it had been reported stolen. After calling for backup, Deputy Holder stopped the van. The van's driver, Matthew Winkle, and passenger, Kevin

Lucas, were removed from the van, arrested, handcuffed, and Mirandized.

One of the assisting officers, Deputy James Thurman, then asked Winkle if there were any weapons in the van. Winkle "hesitated and nervously stated that he . . . didn't have any guns." Tr. p. 62. Deputy Thurman and Deputy Larry Lacy then began to search the van, which was "very, very cluttered and full of stuff," including baskets of clothing, a cooler, a fifty pound bag of dog food, and a bag of frozen meat. Tr. p. 32.

The officers discovered an unlocked black plastic case just behind the console between the van's front seats. Deputy Thurman opened the case and found an unloaded nine-millimeter assault pistol and a high capacity magazine. The officers also discovered a "bright, new and shiny" metal box in the van. Tr. p. 89. But this metal box was locked, so Deputy Lacy

---

1. In their brief, Defendants renew the argument they made in their motion to dismiss appeal. Specifically, they argue that the suppressed evidence does not preclude further prosecution on all pending charges against them, therefore this appeal "should be construed by this Court as a discretionary interlocutory appeal with the necessary procedures to be followed to verify this Court would accept jurisdiction, which was not done." Br. of Appellee at 4. In considering this argument, the motions panel of this court denied Defendants' motion to dismiss pursuant to *State v. Aynes*, 715 N.E.2d 945 (Ind.Ct. App.1999), which held that:

> we will not weigh the sufficiency of the evidence available for the State to continue prosecution of a defendant. Nor will we second-guess the State's determination that the trial court's suppression order is tantamount to a dismissal and therefore appealable. It is not the role of the Court of Appeals to review the evidence available to the State and make an independent determination whether prosecution is possible without the suppressed evidence. Such decisions are strategic in nature and rest with the attorneys representing the State in each case.

It is clear from the text of the statute, however, that our legislature did not intend for [Indiana Code section 35–38–4–2(5)] to permit appeals by the state of any suppression order with the result that when the state loses an appeal it may decide to continue the prosecution anyway on the evidence still available. The clear and unambiguous language of subsection (5) states that the State may appeal a suppression order only "if the ultimate effect of the order is to preclude further prosecution." Ind.Code § 35–38–4–2(5). It follows that the State's initiation of the appeal constitutes a judicial admission that prosecution cannot proceed without the suppressed evidence. Thus, if the trial court's order of suppression is affirmed on appeal, the State is precluded from further prosecution in that cause.

*Id.* at 948 (quotations and citations omitted).

2. We heard oral argument on November 15, 2006, at Lakeland High School in Lagrange, Indiana. We thank the school's administration, faculty, and students for their hospitality, and counsel for their presentations.

proceeded to force the lock open with a pocketknife. Inside the box, he found cash, a pipe, marijuana, and a bag containing a crystal-like substance he believed to be methamphetamine. The officers also found a plastic bottle containing LSD. The officers halted their search and had the van towed to the Shelby County Criminal Justice Center to be inventoried. That search revealed additional marijuana as well as several cell phones, CDs, and computer disks. On February 17, 2005, a search warrant was issued for the information contained in those items.

The State charged both Winkle and Lucas with Class A felony possession of methamphetamine, Class A felony dealing methamphetamine, Class C felony possession of a controlled substance, Class A misdemeanor possession of marijuana, and Class B misdemeanor possession of paraphernalia. In addition, Winkle was charged with additional counts of Class D felony receiving stolen property, Class A misdemeanor carrying a handgun without a license, and Class D felony maintaining a common nuisance. Lucas was also charged with Class B misdemeanor visiting a common nuisance.

The Defendants each filed a motion to suppress the evidence discovered in the van, alleging that the search of the closed containers inside the van had violated their rights under the Fourth Amendment and Article I, Section 11 of the Indiana Constitution. The State objected to the Defendants' motions, arguing that the Defendants had no standing to challenge the search because the van was stolen. At a hearing on the Defendants' motions, the deputies testified that they had searched the van under standard sheriff's department procedure for inventorying vehicles. The State submitted a document entitled "Shelby County Sheriff Department Officer Training Tasks," which provided that

"[c]losed containers may be opened" during an inventory search. Ex. Vol., Def.'s Ex. B. The trial court found this written policy to be "unclear on what an officer should do when finding a locked container." Appellant's App. p. 85. The court granted the Defendants' motions to suppress as to the contents of the locked metal box, and the State now appeals.

## Standard of Review

Generally, we review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *State v. Moriarity*, 832 N.E.2d 555, 557–58 (Ind.Ct. App.2005). When conducting such a review, we will not reweigh evidence or judge witness credibility. *Id.* at 558. Here, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *Id.* (citing *State v. Estep*, 753 N.E.2d 22, 24–25 (Ind.Ct.App. 2001)). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.*

## Discussion and Decision

The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. Amend. IV; *Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998) (citing *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind.2006) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). For a search to be reasonable under the Fourth Amend-

ment, a warrant is required unless an exception to the warrant requirement applies. *Id.* (citing *Berry,* 704 N.E.2d at 465). The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement. *Id.* (citing *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993)).

### A. *Expectation of Privacy*

First, the State argues that the Defendants had no legitimate expectation of privacy in the van or its contents because the van was stolen. As such, the State contends that the Defendants lack standing to challenge the search of the van or the containers within it.[3]

The State contends that a defendant has no standing to object to the search of a stolen automobile, as he has no legitimate expectation of privacy in a stolen automobile. *DeBerry v. State,* 659 N.E.2d 665, 670 (Ind.Ct.App.1995) (citing *Mendelvitz v. State,* 416 N.E.2d 1270, 1274 (Ind.Ct.App. 1981)). Thus, the State argues that "Defendants' lack of expectation of privacy [in the stolen van] extends to the containers within the vehicle. To allow an expectation of privacy in a container on a premises to which a defendant has no right to be is illogical." Br. of Appellant at 6.

The Defendants, in turn, argue that the facts here are akin to those addressed by this court in *State v. Friedel,* 714 N.E.2d 1231 (Ind.Ct.App.1999). In *Friedel,* a passenger in a vehicle challenged the search of her purse, which was left in the car when police asked the occupants to get out. Rejecting the State's argument that as a passenger, Friedel had no privacy interests in another's car, this court noted that the "question is not whether Friedel had standing to challenge the search of Underwood's automobile, but rather whether she has standing to challenge the search of her purse which was in Underwood's automobile." *Id.* at 1236. Noting that purses are "special containers" as they are "repositories of especially personal items," this court concluded that Friedel had a legitimate expectation of privacy in her purse. *Id.* (quoting *Wyoming v. Houghton,* 526 U.S. 295, 308, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (Breyer, J., concurring)).

Likewise, regardless of their interest in the stolen van, the issue here is whether the Defendants have a reasonable expectation of privacy in a *locked* metal box. Our supreme court has noted that a "locked briefcase is comparable to a purse in that both are closed containers that often hold personal items." *Krise v. State,* 746 N.E.2d 957, 966 (Ind.2001). We believe the same holds true for a *locked* metal box. Thus, we conclude that the Defendants had standing to challenge the search of the locked metal box at issue.

### B. *Inventory Search*

The State argues that, even if the Defendants have a reasonable expectation of

---

**3.** The trial court found it "fundamentally unfair" for the State to charge the Defendants with possessing contraband while also arguing that they lacked sufficient possessory interest to challenge the search. Appellant's App. p. 83. 5 However, our supreme court has declined to adopt the "automatic standing" rule, which would confer automatic standing on persons accused of crimes where possession was both an element of the crime and a factor necessary for standing to challenge a warrantless search. *Livingston v. State,* 542 N.E.2d 192, 194 (Ind.1989). The U.S. Supreme Court repudiated the "automatic standing" rule for possessory crimes in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), although the State of Indiana may provide its citizens with greater protections than those afforded by the U.S. Constitution. *See Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995).

privacy to contest the search, the contraband discovered in the locked box was the product of a valid inventory search, a well-recognized exception to the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Woodford v. State*, 752 N.E.2d 1278, 1281 (Ind.2001); *Fair v. State*, 627 N.E.2d 427, 431 (Ind.1993).

 In determining the reasonableness of an inventory search, courts must examine all the facts and circumstances of a case. *Fair*, 627 N.E.2d at 431 (citing *Opperman*, 428 U.S. at 375, 96 S.Ct. 3092). This examination typically encompasses two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. *Id.* Where either is clearly unreasonable, the search will not be upheld. "In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together." *Id.*

 Here, there is no question that the van was reported stolen and that the arresting officer was justified in impounding the vehicle. *See Vehorn v. State*, 717 N.E.2d 869, 875 (Ind.1999). Therefore, we turn to the reasonableness of the inventory search itself, as "[e]ven the lawful custody of an impounded vehicle does not itself dispense with the constitutional requirement of reasonableness in regard to the searches conducted thereafter." *Fair*, 627 N.E.2d at 435.

 In order to insure that the search is not a pretext "for general rummaging in order to discover incriminating evidence[,]" the State must establish that the search was conducted pursuant to standard police procedures. *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)). *See also Lyles v. State*, 834 N.E.2d 1035 (Ind.Ct.App.2005).

 In order to meet its burden, the State must do more than offer a mere statement of a police officer that the search was performed as a routine inventory. *Stephens v. State*, 735 N.E.2d 278, 282 (Ind.Ct.App.2000), *trans. denied.* The circumstances of the intrusion must also indicate that the search was carried out under routine department procedures which are consistent with the protection of officers from potential danger and false claims of lost or stolen property as well as the protection of those arrested. *Moore v. State*, 637 N.E.2d 816, 820 (Ind.Ct.App.1994) (quoting *Rabadi v. State*, 541 N.E.2d 271, 275 (Ind.1989)).

 Both the location of the search and the primary responsibilities of the officer conducting the search may be considered indicia of pretext which draw into question whether the search was conducted in good faith. *Bartruff v. State*, 706 N.E.2d 225, 229 (Ind.Ct.App.1999) (citing *Fair*, 627 N.E.2d at 436). Inventory searches conducted at the impound lot by an officer assigned to such duties are greatly preferred to searches conducted at the scene, without a warrant, by the arresting officer. *See Edwards v. State*, 762 N.E.2d 128, 134 (Ind.Ct.App.2002) (citing *Fair*, 627 N.E.2d at 436).

 The State argues that the search, including the opening of the locked box, was consistent with Shelby County Sheriff's Department policy. While the purported policy of the Shelby County Sheriff's Department provided that closed containers could be opened, it made no reference to locked containers.

Ex. Vol., Def.'s Ex. B. The trial court found the policy to be "unclear on what an officer should do when finding a locked container" and thus found no "clear department policy or procedure to mandate the opening of a locked container as part of an inventory search[.]" Appellant's App. pp. 85–86.

As noted above, in reviewing a trial court's decision on a motion to suppress, we may neither reweigh the evidence or judge witness credibility. Therefore, under these facts and circumstances, we cannot conclude that the trial court erred when it ordered the contents of the locked metal box suppressed.

### C. Indiana Constitution

Finally, the State contends that the inventory search was reasonable under Article I, Section 11 of the Indiana Constitution. To determine if a search and seizure is lawful under the Indiana Constitution, we apply a different analysis. But on the facts before us, we reach the same result.

Article I, Section 11 protects those areas of life that Hoosiers regard as private from unreasonable police activity. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). In determining admissibility of evidence seized in a search, the trial court must consider the facts of the case to decide whether the police behavior was reasonable. *Id.* The provision must be liberally construed in its application to guarantee that people will not be subjected to unreasonable search and seizure. *Id.* It is the State's burden to prove that the search was reasonable under the totality of the circumstances. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001).

Instead of focusing on the defendant's reasonable expectation of privacy, in analysis under Article I, Section 11, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances. *Trimble v. State*, 842 N.E.2d 798, 803 (Ind.2006) (citing *Moran v. State*, 644 N.E.2d 536, 539 (Ind.1994)). We will consider the following factors in assessing reasonableness: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind.2005)).

As the trial court aptly noted, the officers "had control of the locked box and could have easily obtained a search warrant to open it, just as they did to investigate the contents of the cell phone and computer diskettes five days after the Defendants' arrest." Appellant's App. p. 86. We agree. Under these facts and circumstances, we conclude that the warrantless search of the locked metal box was unreasonable under Article I, Section 11 of the Indiana Constitution.

### Conclusion

The trial court did not err when it granted the Defendants' motion to suppress.

Affirmed.

VAIDIK, J., and BARNES, J., concur.