STATE of Indiana, Appellant–Plaintiff,

v.

Jason B. BROWN, Appellee–Defendant.

No. 38A05–0810–CR–573.

Court of Appeals of Indiana.

Feb. 9, 2009.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Dale W. Arnett, Winchester, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Jason Brown was charged with operating a motor vehicle after his driving privileges had been suspended for life,[1] a Class C felony. Brown filed a motion to suppress evidence obtained as a result of his alleged unconstitutional detention. The trial court granted the motion, which effectively precluded further prosecution. Pursuant to Indiana Code section 35–38–4–2(5), the State appeals, raising the following issue: whether the initial stop and detention of Brown constituted unreasonable police activity in violation of Article 1, section 11 of the Indiana Constitution.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are as follows. On the evening of June 14, 2008, Deputy Tony Lennartz of the Jay County Sheriff's Department and Pennville Town Marshal Ralph Frazee received a complaint regarding a noisy party at a property located just outside of Pennville, Indiana. Marshal Frazee and two of his deputies arrived at the scene first and pulled in front of a gate that crossed a lane down which the party was being held. Deputy Lennartz joined the officers a few minutes later and heard "a very large party going on out there." *Tr.* at 6. The officers saw a couple of cars at the entrance to the gate and "a bunch in the back ... [but] actually never even went to the back." *Id.* Marshal Frazee and Deputy Lennartz approached the gate, spoke with four or five of the party organizers, and requested that the noise be turned down. *Id.* at 6, 24. The organizers immediately complied.

As Deputy Lennartz was preparing to leave, he observed a truck drive by the lane, turn around, and pull into the lane. Although Deputy Lennartz was ready to leave, he decided to go and talk to the driver. *Id.* at 7. The truck proceeded up the lane, turned off into a grassy area, and parked close to where the deputy was standing. The driver of the truck, who was later identified as Brown, exited the vehicle. Deputy Lennartz, who was not familiar with Brown, requested that Brown come over to where the officer was standing. At the suppression hearing, Deputy Lennartz testified that he wanted to speak with Brown to inform him of the noise complaint and to request Brown's assistance in notifying the people at the party to keep the volume down. *Id.* at 7–8. Deputy Lennartz never conveyed that information to Brown.

When Brown did not move toward Deputy Lennartz as requested, the Deputy moved toward Brown. Deputy Lennartz noticed that Brown appeared to be very nervous, and he asked to see Brown's driver's license. Brown responded that he had left it in his checkbook at home. Deputy Lennartz then asked Brown for his name and birth date, to which Brown responded "Brian C. Brown" with a birth date of November 12, 1974. *Id.* at 12. Deputy Lennartz ran a driver's license check based on that information and received a response that there was no person with that name and birth date on file. Deputy Lennartz asked Brown a second time for his correct name and address, and Brown said that his name was "Brad C. Brown" with a birth date of December 11, 1974. *Id.*

Marshal Frazee, who had also been preparing to leave the premises, saw Brown pull into the lane and park. He then

---

1. *See* Ind.Code § 9–30–10–17.

observed Deputy Lennartz approach Brown's truck. Before Marshal Frazee left the property, he overheard radio traffic that Deputy Lennartz was running a check on a driver. Marshal Frazee returned to where Deputy Lennartz and Brown were located to provide assistance if necessary. Upon approaching, Marshal Frazee recognized Brown and addressed him by his correct name. Deputy Lennartz ran a license check using Brown's correct name and determined that Brown was an habitual traffic violator. Brown was arrested and charged with Class C felony operating a vehicle during a lifetime forfeiture of his driver's license. Brown filed a motion to suppress, and the trial court conducted a hearing on the motion. On August 25, 2008, the trial court issued its written order granting Brown's motion. The State now appeals.

## DISCUSSION AND DECISION

The State contends that the trial court erred in granting Brown's motion to suppress. Specifically, it contends that Deputy Lennartz's request for identification was reasonable police activity under Article 1, section 11 of the Indiana Constitution because the interaction between Brown and Deputy Lennartz was a consensual encounter. As such, the State contends that all evidence obtained during the stop should be admissible.[2]

■■■ Here, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression mo-

tion was contrary to law. *State v. Lucas,* 859 N.E.2d 1244, 1248 (Ind.Ct.App.2007), *trans. denied.* This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* We will not reweigh the evidence or judge witness credibility. *Id.*

■■■ Article 1, section 11 of the Indiana Constitution provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure." " 'The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances.' " *Baxter v. State,* 891 N.E.2d 110, 117 (Ind.Ct.App.2008) (quoting *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind.2005)). In determining whether police behavior was reasonable under the Indiana Constitution, "courts must consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures." *Taylor v. State,* 842 N.E.2d 327, 334 (Ind. 2006); *Buckley v. State,* 886 N.E.2d 10, 14 (Ind.Ct.App.2008).

While there may well be other relevant considerations under the circumstances, our Supreme Court has explained reasonableness of a search or seizure as turning " 'on a balance of: 1) the degree of concern, suspicion, or knowledge that a viola-

---

2. At the suppression hearing, Brown argued that evidence was obtained from him in violation of both the Fourth Amendment of the United States Constitution and Article 1, section 11 of the Indiana Constitution. The trial court found no violation of the Fourth Amendment and suppressed Brown's evidence solely on the basis that the police activity was unreasonable under the Indiana Constitution. The State appeals the trial court's determination that Brown's evidence was obtained in violation of the Indiana Constitution. Brown cross-appeals contending that the trial court erred in failing to find that the police inquiry also violated the Fourth Amendment. Finding as we do that Deputy Lennartz's actions were unreasonable under Article 1, section 11 of the Indiana Constitution, we do not address the Fourth Amendment issues raised in Brown's cross-appeal.

tion has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *State v. Washington,* 898 N.E.2d 1200, 1205 (Ind., 2008) (quoting *Litchfield,* 824 N.E.2d at 361); *Baxter v. State,* 891 N.E.2d 110, 117 (Ind.Ct.App.2008).

■ In its order granting Brown's motion to suppress, the trial court balanced the totality of the circumstances as follows:

> The Defendant had just arrived at the location where the party was being held. Marshall [sic] Frazee and Deputy Lennartz had already spoken to the individuals at the party regarding the complaint about the excessive noise and the matter had been resolved to the officers' satisfaction. The officers were in the process of leaving the site of the party when the Defendant initially entered the private lane to the location where the party was being held. The complaint being responded to by Deputy Lennartz and Marshall [sic] Frazee had been resolved and the Defendant who was just arriving at the site of the party could not have been the subject of the original complaint. There has not been shown to be any real need for Deputy Lennartz to communicate with the Defendant and consequently his decision to request the Defendant to see his driver's license was random in nature as opposed to being justified by the complaint which initially resulted in Deputy Lennartz going to the site of the party. Law enforcement needs should allow that when police officers have been requested as a part of their duties to interact with an individual, they should be free to verify that that person does not have known or suspected dangerous propensities. This goal

can be accomplished by checking the person's name against law enforcement records. *Cochran v. State,* 843 N.E.2d 980 (Ind.Ct.App.2006). Given that the Defendant had not yet arrived at the party when the officers had informed the persons present at the party of the noise complaint, the Court does not find that there was any need to interact with the Defendant and thus no need to ascertain his identity. In addition the Indiana Court of Appeals noted in the *Cochran* case that there was no indication that the officer requested Cochran's name and birth date for the specific purpose of establishing whether Cochran had a driver's license. The Court, after considering the totality of the circumstances, does not find that Deputy Lennartz's actions were reasonable as required by *Article 1, Section 11 of the Indiana Constitution.*

*Appellant's App.* at 21 (emphasis in original).[3]

The State contends that Deputy Lennartz's encounter with Brown was reasonable since the Deputy did not stop Brown. Instead, Brown stopped himself by pulling into the lane and parking his truck. The State also argues that Deputy Lennartz's purpose in approaching Brown was reasonable since he merely wanted to relay to Brown the need for the partygoers to be quiet. The request for Brown's driver's license arose only after Deputy Lennartz noticed Brown's nervousness. The State offers that, while nervousness may be insufficient to support reasonable suspicion, *Finger v. State,* 799 N.E.2d 528, 534 (Ind. 2003), here there is no need for reasonable suspicion to validate Deputy Lennartz's encounter with Brown since the encounter was neither a stop nor a detention.

---

**3.** We commend the trial court for the thoroughness of its order, which has greatly aided this court in its appellate review.

Appealing as it does from a negative judgment, the State must show that the trial court's ruling on the suppression motion was contrary to law. *Lucas*, 859 N.E.2d at 1248. This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* Here, Deputy Lennartz was one of four officers responding to a complaint of a loud party. Deputy Lennartz and Marshal Frazee discussed the complaint with the party organizers, requested that the noise be kept down, and the organizers immediately complied. Brown did not arrive on the scene until the officers had completed their duties and were preparing to leave. By his late arrival, Brown could not have been the subject of the initial complaint. The trial court concluded, "Given that the Defendant had not yet arrived at the party when the officers had informed the persons present at the party of the noise complaint, the Court does not find that there was any need to interact with the Defendant and thus no need to ascertain his identity." *Appellant's App.* at 21. We agree. We cannot say that the State sustained its burden of proving that the suppression order was contrary to law.

Affirmed.

BAKER, C.J., and NAJAM, J., concur.