**Michael W. GEORGE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 73A05–0808–CR–503.

Court of Appeals of Indiana.

Feb. 24, 2009.

Transfer Denied May 14, 2009.

Stephen Gerald Gray, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Mellisica K. Flippen, Monika Prekopa Talbot, Deputies Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Following a bench trial, Michael George appeals his conviction of possession of a controlled substance, a Class D felony. On appeal, George raises one issue, which we restate as whether the trial court properly concluded that the seizure of morphine tablets during a warrantless search of George's vehicle did not violate the Fourth Amendment of the United States Constitution or Article I, Section 11, of the Indiana Constitution. Concluding the trial court properly concluded the search did not violate either constitutional provision, we affirm.

### Facts and Procedural History [1]

At approximately 12:15 a.m. on February 26, 2007, Deputy Michael Cleveland of the Shelby County Sheriff's Department stopped George's vehicle for speeding on a rural stretch of highway near the intersection of State Road 9 and County Road 650 North in Shelby County. A check of George's identification revealed that his license was suspended and that he had been convicted in 2006 of operating a vehicle with a suspended license. Although he could have arrested George on the basis of this information,[2] Deputy Cleveland chose instead to issue George a citation for operating a vehicle with a suspended license. Because George was unable to drive and there were no passengers in the vehicle, Deputy Cleveland arranged to have George's vehicle impounded. Out of courtesy, Deputy Cleveland also offered to give George a ride to his destination. George accepted, and, around the time the two departed, Deputy Darren Chandler arrived to search the vehicle and inventory its contents before impounding it.

While searching a compartment on the driver's side door of the vehicle, Deputy Chandler discovered a lidless condom box. Inside the box was an amber-colored, translucent pill bottle that lacked a prescription label. Suspecting the pill bottle might contain contraband, Deputy Chandler sent a message to Deputy Cleveland's vehicle's computer stating he may have discovered "narcotics." Transcript at 117 (March 18, 2008, bench trial). Also around this time, and consistent with the sheriff's department's policy, Deputy Chandler opened the pill bottle and emptied its contents. Inside the pill bottle were eight round tablets, each displaying the same inscription. Deputy Chandler could not determine whether the pills were contraband, so he contacted a Shelbyville pharmacist and gave the pharmacist a description of them. The pharmacist searched a database of consumer drugs—a common tool in the pharmaceutical industry, used primarily for filling prescriptions—and determined the tablets were thirty-milligram doses of morphine. Deputy Chandler re-

---

1. We heard oral argument on January 22, 2009, at West Lafayette Junior/Senior High School in West Lafayette, Indiana. We thank counsel for their capable advocacy, and extend our gratitude to West Lafayette's students, faculty, and administration for their hospitality.

2. Indiana Code section 35–33–1–1(a)(4) permits a law enforcement officer to arrest a person if the officer has probable cause to believe the person is committing a misdemeanor, and Indiana Code section 9–24–19–2 makes it a Class A misdemeanor for a person to operate a vehicle when the person knows he has a suspended license and has been convicted of driving with a suspended license within ten years of the date of the instant offense.

layed this information to Deputy Cleveland, who placed George under arrest for possession of a controlled substance.

On February 26, 2007, the State charged George with possession of a controlled substance, a Class D felony, and driving with a suspended license, a Class A misdemeanor. On July 17, 2007, George filed a motion to suppress evidence seized during the vehicle search. On November 7, 2007, the trial court conducted a suppression hearing, at which it heard testimony from Deputies Cleveland and Chandler. On January 8, 2008, the trial court entered an order denying George's motion. The case culminated in a bench trial on March 18, 2008, with the trial court again hearing testimony from Deputies Cleveland and Chandler, as well as from the pharmacist who identified the tablets as morphine. The trial court also admitted evidence seized from the vehicle search over George's objection. Based on this evidence, the trial court found George guilty of both charges. George now appeals his conviction of possession of a controlled substance only.

*Discussion*

### I. Standard of Review

In cases such as this one, where the defendant does not appeal the denial of a motion to suppress and the evidence is admitted over the defendant's objection at trial, the issue is framed as whether the trial court abused its discretion in admitting the evidence at trial. *Cochran v. State*, 843 N.E.2d 980, 982–83 (Ind.Ct.App. 2006), *trans. denied, cert. denied,* 549 U.S. 1122, 127 S.Ct. 943, 166 L.Ed.2d 722 (2007). This court will reverse such a ruling if the trial court has abused its discretion. *Id.* at 983. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* In making this determination, this court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App. 2007). Moreover, this court considers evidence from the trial as well as evidence from the suppression hearing that is not in direct conflict with the trial evidence. *Kelley v. State*, 825 N.E.2d 420, 427 (Ind.Ct. App.2005).

### II. Fourth Amendment Violation

George argues the vehicle search violated the Fourth Amendment of the United States Constitution. The Fourth Amendment states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The purpose of this provision is to protect people from unreasonable search and seizure, and it applies to the states through the Fourteenth Amendment. *Krise v. State*, 746 N.E.2d 957, 961 (Ind.2001) (citing *Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The remedy for a violation of the Fourth Amendment is to render inadmissible any evidence seized during the illegal search. *Mapp,* 367 U.S. at 654–55, 81 S.Ct. 1684.

"The Fourth Amendment requires the police to obtain a search warrant from a neutral, detached magistrate prior to undertaking a search of either a person or private property, except under special circumstances fitting within 'certain carefully drawn and well-delineated exceptions.'" *Sellmer v. State*, 842 N.E.2d 358, 362 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The State concedes Deputy Chandler's inventorying of the vehicle was a search and that it was conducted without a warrant. As such, Deputy Chandler's search was per se unreasonable, and the

State bore the burden of convincing the trial court that the search fell within one of the well-delineated exceptions to the warrant requirement. *See Ludlow v. State,* 262 Ind. 266, 269, 314 N.E.2d 750, 752 (1974) (citing *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)). On appeal, the question becomes whether the trial court abused its discretion when it concluded the search fell within one of these exceptions.

 The parties' arguments address the applicability of the "inventory search" exception. Before addressing these arguments, some general principles are in order. The inventory search exception permits a police officer to conduct a warrantless search of a lawfully impounded automobile if the search is designed to produce an inventory of the vehicle's contents. *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993) (citing *South Dakota v. Opperman,* 428 U.S. 364, 365, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). Such searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Because impounding a vehicle is viewed as fulfilling a caretaking function rather than a criminal investigatory function, the exception does not require probable cause. *Fair,* 627 N.E.2d at 430 (citing *Opperman,* 428 U.S. at 370 n. 5, 96 S.Ct. 3092); *see also United States v. Cherry,* 436 F.3d 769, 772 (7th Cir.2006) ("Inventory searches are a recognized exception to the warrant and probable-cause requirements of the Fourth Amendment."), *cert. denied,* 549 U.S. 1119, 127 S.Ct. 934, 166 L.Ed.2d 717 (2007).[3] To determine whether a search falls within the exception, a reviewing court must examine

two overlapping sets of circumstances. First, the propriety of the impoundment must be established because the need for the inventory arises from the impoundment. Second, the scope of the inventory must be evaluated. Where either is clearly unreasonable, the search will not be upheld. In borderline cases, however, the ultimate character of the search is often most clearly revealed when both the necessitousness of the impoundment and the scrupulousness of the inventorying are viewed together.

*Fair,* 627 N.E.2d at 431. George concedes the impoundment was proper, so our focus turns to the scope of the inventory search.

 To safeguard against "a general rummaging in order to discover incriminating evidence," *id.* at 435 (quoting *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)), an inventory search must be conducted in conformity with "standard police procedures" that are "rationally designed to meet the objectives that justify the search in the first place" and that "sufficiently limit the discretion of the officer," *id.* "Searches in conformity with such regulations are reasonable under the Fourth Amendment." *Id.* (citing *Opperman,* 428 U.S. at 376, 96 S.Ct. 3092).

---

3. It is worth mentioning as an aside that relief from both the warrant and probable cause requirements makes the inventory search exception a substantial one. At least one other recognized exception, the so-called "special needs" doctrine, relieves law enforcement of both requirements, *see Griffin v. Wisconsin,* 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), while others, such as the "automobile exception" and "exigent circumstances," relieve law enforcement of the warrant requirement, but still require probable cause, *see California v. Acevedo,* 500 U.S. 565, 575–76, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

George does not challenge Deputy Chandler's decision to open the pill bottle. The concession is well-taken because the Shelby County Sheriff's Department's inventory search policy leaves no room for officer discretion in such an instance; it states that "[c]losed or locked containers shall be opened," state's exhibit 4 at 2 (November 7, 2007, suppression hearing); state's exhibit 3 at 2 (March 18, 2008, bench trial), and the Supreme Court has stated that such a policy does not offend the Fourth Amendment, see *Wells*, 495 U.S. at 4, 110 S.Ct. 1632. Instead, George focuses on Deputy Chandler's decision to contact the pharmacist, arguing this additional act was constitutionally impermissible because the policy is silent regarding whether an officer may "determine the chemical composition of all medications found inside a vehicle" during an inventory search. Appellant's Brief at 11. To support this argument, George relies on *State v. Lucas*, 859 N.E.2d 1244 (Ind.Ct.App. 2007), *trans. denied.* In *Lucas*, a panel of this court affirmed the trial court's suppression of contraband seized when police officers pried open a locked box during an inventory search of a vehicle. The court noted that although the department's inventory search policy "provided that closed containers could be opened, it made no reference to locked containers." 859 N.E.2d at 1251. As such, the court reasoned the search was more akin to a "general rummaging" than it was a search "conducted pursuant to standard police procedures" and therefore invalidated the search. *Id.* at 1250.

We agree with George that the Shelby County Sheriff's Department's policy is similar to the policy in *Lucas* in that both are silent regarding whether the officer conduct at issue—in *Lucas*, opening locked containers; here, determining the chemical composition of an unknown drug—was authorized.[4] We also agree with George that it is difficult to square Deputy Chandler's decision to contact the pharmacist with any of the goals the inventory search exception seeks to vindicate; that is, the tablets did not present a danger to Deputy Chandler, and he could have fulfilled the safekeeping and protection against false claims functions by recording his recovery of the tablets on the search log and then securing them in the department's property room.

Despite the similarities between this case and *Lucas*, however, a subtle, yet significant, difference remains. In *Lucas*, the object of the search—contraband inside a locked box—had not been lawfully seized because the policy was silent regarding whether the officers were authorized to open locked containers, whereas here the morphine tablets had already been lawfully seized pursuant to the policy (recall the policy requires that closed containers be opened), and then subjected to additional analysis. That distinction brings Officer Chandler's decision to contact the pharmacist in line with a body of case law standing for the general proposition that once the object of a search has been properly seized, whether pursuant to a warrant or an exception to the warrant requirement, additional testing of that object does not violate the Fourth Amendment.

4. Interestingly, the policy in *Lucas* also was that of the Shelby County Sheriff's Department. *See* 859 N.E.2d at 1248, 1250. The policy admitted into evidence at George's suppression hearing and bench trial states it was revised on June 14, 2006, *see* state's ex. 4 at 2 (November 7, 2007, suppression hearing); state's ex. 3 at 2 (March 18, 2008, bench trial), which is around the time that the parties in *Lucas* were finishing their briefing. The opinion in *Lucas* was handed down on January 17, 2007.

■ That was the view a panel of this court took in *Bastin v. State,* 510 N.E.2d 229 (Ind.Ct.App.1987). *Bastin* involved an inventory search of the defendant's person prior to booking and jailing him. The search resulted in the seizure of a pill that was subjected to laboratory analysis and confirmed to contain a controlled substance. In rejecting the defendant's argument that subjecting the pill to laboratory analysis constituted a seizure separate from that of the inventory search, the court concluded that

> when an unknown drug or chemical substance is discovered on the arrestee's person as a result of an inventory search, it does not constitute a *separate* seizure within the meaning of the Fourth Amendment when the government submits that substance, or a sample of it, for laboratory analysis. That conduct on the part of government officials is a part of and incidental to the proper conduct of an inventory search.

*Bastin,* 510 N.E.2d at 231 (emphasis in original). Analytically, we disagree with the *Bastin* court's description of subjecting the pill to laboratory analysis as a seizure. Within the meaning of the Fourth Amendment, a "seizure" occurs when a state actor meaningfully interferes with an individual's possessory interest in property, and a "search" occurs when an expectation of privacy that society is prepared to recognize as reasonable is infringed. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Subjecting a lawfully seized item to testing is properly described, then, not by invoking the language of "seizure" (the item has already been seized, and it is therefore difficult to see how the individual's possessory interest could be further diminished), but by analyzing whether the testing constitutes a search; that is, whether the state actor has infringed on an objectively reasonable expectation of privacy.

Despite our analytical disagreement with the *Bastin* court's reasoning, the overall thrust of the opinion is sound, and, as far as our research discloses, consistent with other jurisdictions that have addressed whether testing a lawfully seized item constitutes a search within the meaning of the Fourth Amendment. *See Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353, 1356 (1991) (concluding an FBI computer expert's recovery of electronic files from a computer lawfully seized pursuant to a warrant did not constitute a search in part because "many analogous situations," such as deciphering a lawfully seized coded diary, "do not require police officers to obtain a *second* search warrant" (emphasis in original)), *abrogated on other grounds by Commonwealth v. Rizzuto,* 566 Pa. 40, 777 A.2d 1069, 1088–89 (2001); *State v. Petrone,* 161 Wis.2d 530, 468 N.W.2d 676, 681 (1991) (concluding the development of photographic film lawfully seized pursuant to a warrant did not constitute a search in part because the film development merely "expose[d] what is already present in a substance but not visible with the naked eye"), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991), *overruled on other grounds by State v. Greve,* 272 Wis.2d 444, 681 N.W.2d 479, 489 n. 7 (2004); *see also People v. Adler,* 50 N.Y.2d 730, 737 n. 4, 431 N.Y.S.2d 412, 409 N.E.2d 888 (1980) (noting, in dictum, that subjecting lawfully seized pills to laboratory analysis did not constitute a search because it "cannot be said that an intrusion into privacy interests was effected by scientifically examining the drugs" and because a contrary rule "would result in a mandate that the police obtain a warrant whenever legally seized drugs are to be subjected to analysis"), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *cf. United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir. 1983) ("[W]e hold that once an item in an individual's possession has been lawfully

seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant."), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

Consistent with *Bastin* and the foregoing cited cases, we conclude that the tablets, having been lawfully seized pursuant to an inventory search, were not subjected to an additional search within the meaning of the Fourth Amendment when Deputy Chandler contacted a pharmacist to determine their chemical composition. Thus, it follows that as far the Fourth Amendment is concerned, the trial court did not abuse its discretion when it admitted evidence obtained from the inventory search of George's vehicle.

## II. Article I, Section 11, Violation

■■■ George argues the vehicle search also violated Article I, Section 11, of the Indiana Constitution. Article I, Section 11, states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." Although this provision derives from and shares nearly the same language as the Fourth Amendment, our supreme court has stated that it will interpret and apply Section 11 independently from Fourth Amendment jurisprudence. *State v. Bulington,* 802 N.E.2d 435, 438 (Ind.2004). "Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable." *Id.*

The State argues that Deputy Chandler's decision to open the pill bottle was reasonable because the inventory search policy required him to do so and that his decision to contact the pharmacist was reasonable because "in order to conduct a proper inventory search, it is reasonable to

... properly identify everything in a vehicle." Appellee's Brief at 3. We agree with the State that Deputy Chandler's conduct was reasonable in both instances, and add our own observation that in the latter instance, Deputy Chandler's decision to contact the pharmacist was justified because he was faced with a pill bottle that lacked a prescription label. Police officers should not be burdened with the warrant requirement under such circumstances because, as the State notes, delay might result in someone missing a scheduled dosage of medication. Finally, although we agree somewhat with George's argument that disclosure of a prescription to a third party such as a pharmacist may infringe an individual's privacy, and may even disclose embarrassing details if the individual is taking medication for a loathsome disease, this case does not present such a situation because there is no evidence Deputy Chandler disclosed George's identity to the pharmacist.

We conclude that based on the totality of the circumstances, Deputy Chandler's conduct was reasonable. Thus, it follows that Article I, Section 11, was not violated, and the trial court properly admitted evidence obtained from the inventory search of George's vehicle.

### *Conclusion*

The inventory search of George's vehicle did not violate the Fourth Amendment of the United States Constitution or Article I, Section 11, of the Indiana Constitution, and the trial court therefore properly admitted the items seized from the inventory search into evidence.

Affirmed.

BAKER, C.J., and BRADFORD, J., concur.