## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2018, 10:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

C. Brent Martin
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raymond Marling,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

May 25, 2018

Court of Appeals Case No.
40A01-1711-PC-2620

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause No.
40C01-1504-PC-1

**Brown, Judge.**

[1] Raymond Marling appeals the post-conviction court's denial of his petition for post-conviction relief. He raises one issue which we revise and restate as whether the post-conviction court erred in denying his petition. We affirm.

## *Facts and Procedural History*

[2] The relevant facts as discussed in Marling's direct appeal follow:

> In April 2013, police were investigating the whereabouts of a missing person. Matt Loper was identified as a person of interest in that investigation, and North Vernon Police Detective Ivory Sandefur discovered that Loper and Marling were friends. Detective Sandefur also discovered that Marling drove a black Dodge Avenger and found there was an active arrest warrant for Marling from Jackson County. The detective also ascertained that Marling might be involved in drug activity and that he might be in possession of a handgun. Detective Sandefur told local police departments to look for Marling.

> On April 25, 2013, Detective Sandefur was investigating leads in the missing person case, along with Indianapolis Police Detective Jerry Gentry. They were driving when they were passed by a black Dodge Avenger. The detectives turned around and followed the vehicle; they also ran the license plate, which returned to Marling and his wife. The windows of the vehicle were tinted, but Detective Sandefur confirmed that the male driver appeared to be Marling. At that point, Detective Sandefur radioed to a uniformed police officer to conduct a traffic stop.

> North Vernon Police Officer Jeffrey Day responded and initiated a traffic stop on County Road 350 North. Marling stopped the vehicle in the traffic lane, so that only the oncoming traffic lane was passable. Officer Day ordered Marling to step out of the car, and Detective Sandefur handcuffed him. Marling was wearing an empty shoulder holster under his shirt.

Officer Day looked inside of the vehicle and saw that there were no passengers. He observed a handgun between the driver's seat and the console; the hammer of the handgun was cocked, but the safety lock was on. Marling told Officer Day that he did not have a permit for the handgun. Officer Day took Marling to jail, where $686 was inventoried from Marling's billfold. Marling asked Officer Day to contact his mother to ask if she could remove money from a black bag in the Avenger and remove the vehicle from impoundment.

North Vernon Police Sergeant Craig Kipper conducted a search of the Avenger prior to impoundment in accordance with North Vernon Police General Order 49, which provides for an inventory search prior to the impoundment of a vehicle if a driver was arrested and was driving the vehicle immediately before arrest. The inventory search included a search of the vehicle in all locations where items of value may be located, including closed and locked containers.

During his search, Sergeant Kipper first took possession of the handgun. He then found several cellphones with chargers, a clear bag with several syringes, four Clonazepam pills, a schedule IV drug, and a clear container with white powder residue. He also found a prescription pill bottle containing Intuniv, a legend drug, one Hydroxyine, a legend drug, and one Vyvanse, a schedule II drug. In the passenger compartment, Sergeant Kipper found $1,000 secured with a rubber band inside a laptop bag. In the trunk, the Sergeant found two rifles, a duffel bag containing .9mm ammunition, a box of syringes, thirty-two loose syringes, and a digital scale that looked like a cell phone. Sergeant Kipper also discovered a metal combination lockbox in the trunk; he opened the box with a screwdriver. The box held a clear baggie containing .51 grams of cocaine, various capsules containing dimethyl sulfone, a cutting agent, four baggies with white residue, and one Clonazepam.

Two days later, Marling called his wife from jail and told her to take the $1000 and to get everything out of storage, unless she

wanted "up north" to take it. Tr. p. 447-49. He also told her that the situation was serious, that she should be scared, and that she should leave the house. He told her that if "up north comes down take him with you to collect the 2gs and show him where Dennis and Maria are staying and you can collect the 2gs from them." Tr. p. 483.

*Marling v. State*, No. 40A01-1403-CR-109, slip op. at 2-5 (Ind. Ct. App. September 30, 2014), *trans. denied*.

[3] On May 1, 2013, the State charged Marling with: Count I, class B felony possession of cocaine with intent to deliver; Count II, class C felony possession of cocaine and a firearm; Count III, class C felony carrying a handgun without a license; Count IV, class D felony possession of a schedule IV controlled substance; Count V, class D felony possession of a schedule II controlled substance; Counts VI and VII, two counts of class D felony possession of a legend drug; and Count VIII, class D felony unlawful possession of a syringe. *Id.* at 5. Additionally, the State alleged that Marling was an habitual offender. *Id.*

[4] On September 30, 2013, Marling filed a motion to suppress all the evidence discovered during the vehicle stop and subsequent inventory search. *Id.* The motion asserted that "[o]nce the officer opened the trunk and found a box, he was not permitted to open it with a screwdriver" and that "[a] warrant should have been obtained," and cited *George v. State*, 901 N.E.2d 590 (Ind. Ct. App. 2009), *trans. denied*. Appellant's Direct Appeal Appendix Volume 1 at 51. The trial court held a hearing on the motion on October 16, 2013. *Marling*, slip op.

at 5. At the hearing, the court admitted a document titled "North Vernon Police Department General Order 49 IMPOUNDMENT," which stated:

49.3.2. Areas to be Inventoried

Inventory the contents of suitcases, boxes and other containers. Inventory articles in:

* * * * *

* Closed and/or Locked Containers – Inventory all closed or locked containers. If a situation exists that requires extreme measures (extensive time, manpower and equipment), and/or unreasonable potential damage to property, the officer should avoid opening the container, but should document why the container was not opened.

State's Exhibit 5. The court denied the motion the next day. *Marling*, slip op. at 5.

[5] On October 21-24, 2013, the court held a jury trial. *Id.* During trial, Marling's counsel objected to admission of evidence found in the locked box in part based upon its opening with a screwdriver and the necessity of having a warrant as stated in *George v. State*, and the court overruled the objection and admitted the evidence. At the close of the State's evidence, the court dismissed Count V, class D felony possession of a schedule II controlled substance. *Marling*, slip op. at 5. The jury found Marling guilty of class B felony possession of cocaine with intent to deliver, class C felony possession of cocaine and a firearm, class A misdemeanor carrying a handgun without a license, class D felony possession of a schedule IV controlled substance, both counts of class D felony

possession of a legend drug, and class D felony unlawful possession of a syringe. *Id.* at 5-6. In a second phase, the jury found Marling guilty of class C felony possession of a handgun by a felon, the felony enhancement to class A misdemeanor possession of a handgun without a license. *Id.* at 6. In the third and final phase, Marling was found to be an habitual offender. *Id.* The court sentenced Marling to an aggregate sentence of thirty-eight years. *Id.*

[6] On direct appeal, Marling argued that the trial court erred when it admitted evidence obtained as a result of a pretextual inventory search, the evidence was insufficient to support his conviction for possession of cocaine with intent to deliver, and the trial court erred when it determined that he was an habitual offender, and this Court affirmed. *Id.* at 2. Specifically, this Court held that the decision to impound the vehicle was reasonable and lawful, that Sergeant Kipper was required to search the vehicle in all locations where items of value may be located pursuant to North Vernon Police Order 49 which "mandates, '[i]nventory all closed or locked containers,'" and that the search was conducted in accordance with standard police procedures. *Id.* at 10 (quoting State's Exhibit 5). The Court also concluded that the inventory search was reasonable under a totality of the circumstances under Article 1, Section 11 of the Indiana Constitution. *Id.* at 9-12.

[7] On April 10, 2015, Marling, *pro se*, filed a verified petition for post-conviction relief. On March 6, 2017, Marling's counsel filed a Motion for Leave to Amend Petition for Post-Conviction Relief asserting that he received ineffective assistance of trial and appellate counsel. Marling also asserted that "the Officer

permanently damaged the lock box by prying the lid open with a screw driver" and the State could not prove that the search was conducted in conformity with their written regulations because "Officer Kipper caused unreasonable damage to property, the lock box, in violation of the written policy." Appellant's Appendix Volume 2 at 32.

[8] That same day, Marling, by counsel, filed a motion for summary disposition. An affidavit of Marling's appellate counsel attached to the motion for summary disposition stated: "I did not consider challenging the admission of the cocaine based on the State's failure to follow its own written procedures for conducting an inventory search. Had I considered it I would have raised the issue based on the decision in *Fair v. State*, 627 N.E.2d 427 (Ind. 1993)." *Id.* at 97. On March 15, 2017, the post-conviction court denied Marling's motion for summary disposition. Marling appealed, and this Court dismissed the appeal without prejudice and remanded for further proceedings on June 30, 2017.

[9] On November 1, 2017, the post-conviction court held an evidentiary hearing. The court admitted the record from the direct appeal as Petitioner's Exhibit 1. Marling's post-conviction counsel asserted that he had an affidavit that was attached to the motion for summary disposition from Marling's appellate counsel "essentially admitting, this was a good argument, I should have made it." Post-Conviction Transcript at 11. Marling's counsel acknowledged that he did not have an affidavit from Marling's trial counsel but argued "there's not strategy for not making this argument." *Id.* Marling's trial and appellate

counsel did not testify at the hearing. On November 6, 2017, the post-conviction court denied Marling's petition.

## *Discussion*

[10] Before addressing Marling's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[11] Marling argues that he received ineffective assistance of both trial and appellate counsel when they failed to "make an obvious argument in support of the denied Motion to Suppress and against the subsequent admission of the cocaine." Appellant's Brief at 13. He acknowledges that the initial stop and the impoundment of his vehicle were proper, but argues that his trial and appellate

counsel failed to argue that the State did not follow its written policy and that the locked box was damaged. He asserts that the language of the regulations "is mandatory that the officer *shall* avoid opening the container if it could cause potential damage or requires extreme measures." *Id.* at 15.

[12] The State maintains that the policy does not include the word "shall" as stated by Marling and contemplates some permissible level of damage that may occur in certain circumstances when officers complied with the general mandate that all locked containers must be opened and inventoried. It argues that Sergeant Kipper's ability to pop open the box with a screwdriver was hardly an extreme measure and nothing in the record reflects any damage to the box or suggests that opening a locked box with a screwdriver would cause unreasonable damage. The State asserts that the photograph of the box admitted at trial does not reveal any actual damage to the box and Marling never complained of any damage. It also contends that opening the box fulfilled one of the administrative purposes of the inventory search, the protection of police from possible danger.

[13] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[14] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d

766, 772 (Ind. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002)).

[15] We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*, 531 U.S. 1128, 121 S. Ct. 886 (2001). Ineffective assistance of appellate counsel claims fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013). "To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, 'the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential.'" *Id.* (quoting *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-261 (Ind. 2000), *reh'g denied*, *cert. denied*, 534 U.S. 1164, 122 S. Ct. 1178 (2002)). "To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 605-606 (Ind. 2001), *reh'g denied*, *cert. denied*, 537 U.S. 839, 123 S. Ct. 162 (2002)). "If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether 'the issues which . . . appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new

trial.'" *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *reh'g denied*, *cert. denied*, 525 U.S. 1021, 119 S. Ct. 550 (1998)).

[16]  We observe that Marling's trial counsel filed a motion to suppress asserting that the traffic stop was improper, that the impoundment of the vehicle and resulting inventory search violated Article 1, Section 11 of the Indiana Constitution because the vehicle did not pose any threat or harm to the community or itself, that "[o]nce the officer opened the trunk and found a box, he was not permitted to open it with a screwdriver," and that "[a] warrant should have been obtained." Appellant's Direct Appeal Appendix Volume 1 at 51. During trial, Marling's trial counsel also objected to the evidence in the box.

[17]  Marling's appellate counsel raised the issues of "[w]hether the discovery of a small undivided amount of cocaine is sufficient to support a conviction for dealing in cocaine," "[w]hether a habitual offender enhancement may be sought for a dealing in cocaine conviction when the defendant has no prior dealing convictions," and "[w]hether evidence obtained as a result of pretextual inventory search that included locked containers should have been excluded from presentation to the jury." Appellant's Direct Appeal Brief at 1. Appellate counsel argued that the search of the locked box in the trunk was unreasonable under the Indiana Constitution. Thus, both trial and appellate counsel challenged the search of the locked box.

[18]  To the extent Marling argues that his trial and appellate counsel failed to argue that the State did not follow its written policy because the box was damaged,

we observe that Marling asserts that, "[b]y the State's own evidence, the police report of Officer Kipper, he had to break open the locked box with a screw driver, causing damage to the property." Appellant's Brief at 15 (citing Appellant's Appendix at 51). However, page 51 of the Appellant's Appendix, cited by Marling, merely states: "In the trunk was a silver square combination lock box. The box was locked. The locked box was opened with a screw driver. In the locked box was more syringes and several items that are used for the ingestion of illegal substances." Appellant's Appendix Volume 2 at 51. We cannot say that this document alone establishes that the box was damaged. Marling does not point elsewhere in the record in support of the assertion that the box was damaged. We cannot say that Marling has demonstrated that his trial or appellate counsel were deficient or that he was prejudiced.[1]

## *Conclusion*

[19] For the foregoing reasons, we affirm the post-conviction court's denial of Marling's petition for post-conviction relief.

[20] Affirmed.

---

[1] To the extent Marling cites *Fair*, we find that case distinguishable. In *Fair*, the Indiana Supreme Court held that a search must be conducted pursuant to standard police procedures and the procedures must be rationally designed to meet the objectives that justify the inventory search. *Fair*, 627 N.E.2d at 435. The Court also held that searches in conformity with such regulations are reasonable under the Fourth Amendment and that to defeat a charge of pretext the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them. *Id.* Given that the State presented its inventory procedure and the portion of the record cited by Marling does not reveal damage to the box and he does not point elsewhere in the record for any damage to the box, we cannot say that the police failed to perform the search in conformity with their procedures.

Bailey, J., and Crone, J., concur.